May it please the Court. My name is Joan Fisher, and with Mr. Schlesinger, I represent Gerald Pizzuto, Jr. The pivotal question before the Court here, under the Martinez analysis, is whether or not there is, in fact, a substantive underlying claim of ineffective assistance of counsel. The answer to that question is an unequivocal yes. Prior to trial, the judge in this case, the sentencing judge, the sole fact finder of death eligibility, advised the defendant's family to get it through their heads that Mr. Pizzuto was a murderer and they were going to burn or fry his ass. So what you're arguing is, as I understand it, ultimately you're using ineffective assistance of counsel to reach judicial misconduct on the theory that if there hadn't been the conflict of interest between Chenoweth and Reinhart, there would have been more aggressive investigation. So although it's ineffective assistance of counsel that you're invoking under Martinez, the underlying issue is the prejudice, if you will, is the Judge Reinhart's bias. Is that correct? The prejudice of the underlying case is, in fact, the failure to challenge Judge Reinhart and his obvious bias as a result of the personal investigation. But isn't that as far as we can go under Martinez? We can't reach the merits of the substantive claims regarding the bias of the judge, can we? That is correct. The question, though, is whether or not there is some evidence of that bias so that this Court can remand it to the district court for a full determination of the actual prejudice that resulted as a result of the deficient performance by trial counsel. So it comes in under the prejudice prong. It comes under the prejudice prong of? Strickland. Of Strickland. So under the IAC of trial counsel. And that's one of the, you know, the double layer of Martinez makes it somewhat complicated, especially in this case. Yes. Because in this case, the trial counsel and post-conviction counsel were one and the same. And thus, when Judge McDonald is looking at cause, he's actually looking at Mr. Chenoweth's actions in post-conviction to determine whether or not his failure to challenge the judge at trial was in effect, was. So in order for you to go through the Martinez gateway, we have to determine whether or not there's a colorable claim, right, based on the record that exists now? That is correct. Okay. So tell us why there's a colorable claim based on the record as it exists now. And the colorable claim that you're referring to is the colorable claim of the underlying trial counsel? No, ineffective assistance of counsel. Because that's all Martinez addresses, is whether or not there was ineffective assistance of counsel such that the Petitioner wasn't able to fully present his claim of ineffective assistance of counsel. So it's double ineffective assistance of counsel. And so we have to see from this record whether or not you have a colorable claim that there is ineffective assistance of counsel that prevented the presentation of an ineffective assistance of counsel claim. So tell us where in this record you meet that requirement. If I understand your question, what you're asking, Your Honor, is what is the Mart go through the Martinez analysis. Right. First, the first inquiry under Martinez is whether or not there's ineffective assistance of post-conviction counsel. So looking at Mr. Chenoweth's actions as post-conviction counsel, we see at that point that he completely defers any challenge to his own trial counsel performance. So he doesn't raise any issues of ineffectiveness. The question then becomes is whether or not he ought to have at least raised the challenge of the judicial bias. And Judge McDonald says, you know, you can't get to that underlying claim of judicial bias of the trial counsel because we have on the record a challenge by Chenoweth, the trial counsel, the post-conviction counsel. Okay. So regardless of what Judge McDonald said, tell us why he was wrong in that. Why Mr. Chenoweth was wrong? Why the judge was why, how you met the requirements of IAC. Why was there prejudice? Was there a culpable claim? The difficulty I'm having with your question, Your Honor, is because Judge Windmill doesn't make any analysis of the post-conviction counsel. Okay. Well, tell us the analysis he should have made and why he should have come to a different conclusion. Post-conviction counsel had a responsibility to assure that Mr. Pizzuto's claims of trial, ineffective assistance of trial counsel, including the underlying judicial misconduct, were raised in post-conviction. It was because he failed to do that that the claims were ultimately defaulted. In fact, there's only three substantive claims related to the Martinez inquiry that were defaulted, and they were that because of the personal close relationship of Mr. Chenoweth with Judge Reinhart, he failed to appreciate and to develop and to be first manifested prior to trial. Did Mr. Chenoweth admit that there was a close relationship between him and the judge? What did he say about that? The pleading, he the pleadings, I want to stay very carefully within the record. And as I understand it, the pleadings support, and I cannot tell you, there is an affidavit from Mr. Chenoweth, and I cannot tell you with any certainty that within that affidavit he admits to the close personal relationship. I think that he does. And there is, in Mr. Ring presented in that second State post-conviction evidence that Mr. Chenoweth admitted to a close personal relationship, admitted to going to law school, admitted to employing Judge Reinhart, admitted to visiting and socializing with Judge Reinhart, you know, in the natural course of that friendship. So that is a – and that has never been disputed. Whether or not that relationship was fully developed, it wasn't because we were defaulted. Counsel, Judge Gould, and I have two brief questions for you, if you could address them at some point. One is, as to your claims of ineffective assistance in regard to trial court bias and not objecting to that, wasn't – weren't those claims litigated as bias claims, not IAC claims in the habeas proceeding that was previously ruled upon? They were not, Judge Gould. They were litigated as substantive claims of judicial bias and as – That's what – Counsel, that's what I was asking. Weren't they litigated as substantive claims of bias, not as IAC claims? And I suppose my answer should have been yes and no. They were litigated as substantive judicial bias claims, but they were also litigated as the underlying prejudice of the ineffective assistance of counsel's failure to challenge Judge Reinhart as a result of that relationship that he had. Okay. Well, then, let me ask you my second question. If these can be viewed by us as IAC claims, that is, if we're able to revisit the bias claims and view them as ineffective assistance of counsel claims, then why are – why aren't they second or successive claims that weren't presented in the first habeas petition? That is, and how do you meet the standards under Gonzales? Your Honor, they were not – they were, in fact, raised in the original habeas petition. They were defaulted in the original habeas petition. And so as a result of that default, we meet the Martinez standard of the default occurs at post-conviction when Nick Chenoweth is still – But were they – were they raised as ineffective assistance of counsel claims? Yes, Your Honor. In the earlier petition? The petition raises the claims and identifies the close personal relationship. There is then briefing on procedural default. Judge McDonald and – Judge McDonald considers the claim and specifically finds that the prejudice arising from that claim is the failure to challenge Judge Reinhart. So the – the petition is not well played, but the petition is clear, and Judge McDonald's understanding of that petition is clear, that they have, in fact, raised ineffective assistance of counsel with the underlying prejudice being the failure to challenge Judge Reinhart's bias. And one of the reasons we know that is because Judge McDonald later says, well, look at his challenge to Judge Reinhart in post-conviction. That shows that he's not afraid to challenge Judge Reinhart. And so it apparently means that the underlying ineffective assistance of counsel regarding judicial bias and the failure to challenge Judge Reinhart was a trial tactic, so that the proceedings below clearly tie the claim of judicial misconduct or judicial bias with the ineffective assistance of counsel claim. So what relief are you expecting in the district court? What should Judge Winmale do if we remanded to the district court? Kennedy, for reconsideration in light of the Martinez analysis, he didn't have what is the – Judge Clifton's opinion and Chadbourne? He did not, Your Honor. Claybourne, rather. And if, you know, if this Court chooses, which it has done, you know, this is in a little different procedural posture than most of the Martinez claims, because Judge Winmale has had the opportunity to review it initially. However, he aborted that review by finding there was no underlying ineffectiveness claim by relying on the cause finding by Judge MacDonald. So assuming that that then requires Judge Winmale to reconsider Martinez, he should then apply that four-step process in Claybourne, which is the ineffective assistance of post-conviction counsel, the prejudice resulting, and then the ineffectiveness that there is some merit to an underlying ineffective assistance of counsel claim. And if necessary, he ought to hold an evidentiary hearing as to whether or not there is, in fact, ineffective assistance of counsel of post-conviction counsel. Once he's determined, if he determines that Martinez does apply and the default should be vacated, then we should be able to move forward on the claims themselves that were erroneously defaulted in the beginning under Coleman v. Thompson. That's the part I'm not getting about your argument is because Martinez is very limited. Martinez does not open the door for a Petitioner to litigate any and all claims that were previously defaulted. It's been limited to ineffective assistance of counsel claims. Correct, Your Honor. And that is the only claim that I am asserting under Martinez that the default would be vacated, would be on the ineffective assistance of counsel claim and, you There is, of course, you know, an argument in the brief that Martinez should be expanded, but I understand that Martinez is limited to the ineffective assistance of counsel claim. And that is all that we're asking under Martinez. All right. Thank you. Did you want to save some time for rebuttal? I will, Your Honor. Thank you. All right. Thank you. May it please the Court. Prior to March 20, 2012, there was not even a hint that Claims 13 and 14 were ineffective assistance of counsel claims. They were judicial bias claims. The State courts recognized they were judicial bias claims. The Federal courts have recognized they're judicial bias claims, including this Court. When it first addressed the claims, recognized them as judicial bias claims. I assume that, and counsel is conceding that unless they're ineffective assistance claims, I think that's what she said. I'm just wondering, how does one, or do you agree with the notion that if one is looking at Claim 20 as an IAC claim or a Sixth Amendment claim subject to Martinez, that if one goes into the Strickland analysis following the Martinez approach, that inevitably the prejudice prong of Strickland would involve looking at the judicial bias claim, not as a freestanding claim, but as a element of the prejudice? The problem I have to say is that I think the essence of Judge Flesher's dissent is that ultimately if the prejudice was, if the jury knew that Judge Reinhart was engaging in the kind of misconduct that's alleged, there would have been prejudice, clear prejudice under the Strickland prejudice component. The problem that I have with that position, Judge Flesher, is that Claim 20 is based upon the nature of the close relationship, the employment, the two individuals, Mr. Chandawith and Judge Reinhart taking trips together. There's no correlation whatsoever between Claims 13 and 14. Well, I'm not trying to make a correlation. I'm trying to understand if Claim 20 went forward and there was a close relationship and that close relationship precluded influence Chandawith at trial not to challenge and investigate the information about Judge Reinhart's misconduct, that that would be the prejudice that derived from his close relationship. And even if there is some semblance of prejudice associated with Claim 20 that involves Claims 13 and 14, we still have the question of deficient performance, which this Court has already addressed. When this Court found that there was no actual conflict of interest as a result of the relationship and that it was a tactical decision on the part of Mr. Chandawith as to whether to file motions to disqualify or to investigate these issues. And that was based on his willingness post-conviction to challenge Judge Reinhart? Well, actually, Your Honor, in post-conviction, Mr. Chandawith did make a claim of judicial bias in the first post-conviction case. He also filed a motion to disqualify Judge Reinhart. And it was because of that, in fact, that this Court concluded that it was a tactical decision, at least as to the trial stage, as to whether to move to disqualify Judge Reinhart. That's really critical in this particular case because the reality is that, at least implicitly, this Court has already addressed whether Claim 20 can establish cause and, for that matter, prejudice, at least in the context of a conflict of interest claim. Now, we've argued that there is a distinction between a conflict of interest claim and an effective assistance of counsel claim. But we do know that this Court ruled on the conflict of interest claim, that Mr. Pizzuto couldn't meet the burden of even establishing a conflict of interest, which is a lesser burden than an ineffective assistance of counsel claim. So I have a very, very difficult time understanding how he can possibly meet his burden of establishing cause and prejudice under Martinez for ineffective assistance of counsel when this Court has already concluded that he couldn't meet the standards for a conflict of interest claim, which is a lesser standard than an ineffective assistance of counsel claim. I struggle with that mightily. Above and beyond the question of whether this is a successive, well, we have, of course, argued that it is successive, and we've been discussing whether a substantive and ineffective assistance of counsel during post-conviction. I would assert that we know that the courts have struggled with ineffective assistance of counsel of post-conviction and what the test is. Of course, Dietrich was a very fractured opinion. Claiborne came out after that and tried to tell us what was left of Dietrich. But what I would submit to this Court is that the standard that should be applied for ineffective assistance of counsel, post-conviction counsel, is very akin to appellate counsel. And if you look at it in the context of raising an ineffective assistance of trial counsel claim versus an ineffective assistance of post-conviction claim, it's kind of like pinholster and the AADPA in a double level of deference. In other words, post-conviction counsel can make a reasoned decision as to whether trial counsel's reasoned decision was proper. Even when post-conviction counsel is trial counsel? Well, that does bring us an interesting twist. And I agree with that. It's pretty troubling. I mean, he's not going to step and, you know, fall on his sword. I mean, some attorneys might do that. It's problematic in this particular case. And that's the reason that we ended up with Hoffman. Judge Gould was on the Hoffman case. And kind of an exception, at least for Idaho, and we fixed that. What I'm talking about is a standard generally that this Court can apply post-Martinez to what is required for a petitioner to establish ineffective assistance of post-conviction counsel. And I would submit that the appellate counsel's standards, which are Strickland standards, are very applicable in that context. As to what I call the Hoffman issue, and Mr. Chenoweth being post-conviction counsel, it's true he didn't raise his own ineffectiveness. That would, in fact, as was discussed in Hoffman extensively, be difficult to do. But he did raise the bias. He raised both the bias of Judge Reinhardt, and he filed the motions to disqualify Judge Reinhardt. But the problem was that the record that was established was deficient, so he couldn't show actual conflict, actual prejudice. I mean, that's the – if there had been better evidence, there would have been better evidence of Reinhardt's conduct in the record, then it would have been a different assessment, would it not? Is that the essence, that he didn't do enough? I thought that's what they're arguing now. Assuming for the sake of argument that, in fact, that evidence could actually be established. No, of course not. And what I'm talking about specifically are the alleged comments to family members, those particularly. And I know that those have troubled at least Judge Fletcher in her dissent. I still don't believe that there would – that there's a – even on the record that we have before us, that there's a sufficient showing of deficient performance because there was no reason for Mr. Chenoweth to not explore that based upon his claims that Judge Reinhardt was already biased. There's just no reason. He could have, if he thought that there was any merit to them. And I would submit that under Strickland, there's a presumption that it was tactical on his part, meaning Mr. Chenoweth's part, and that that presumption hasn't been raised. And I would submit that that just virtually eliminates any claim that it wasn't tactical on Mr. Chenoweth's part to, in fact, raise that specific factual allegation because a claim of judicial bias was, in fact, raised. Even if we get past all of that, and I know that counsel in the Court hasn't discussed that, we would submit that the FELPS six factors haven't even been remotely met in this case. If you look at the cases where this Court has reviewed 60B motions in the context of Martinez, this case is not even close to Lopez. And the other cases where this Court found that those factors have not, in fact, been met, and they have not been met in this case, particularly because of the lack of due diligence, I think I've spelled out in our brief very clearly the lack of diligence in this case. The underlying claims for both the Martinez claim and the fraud on the court claim were known no later than 2005. And yet, Mr. Pezzuto did not come forward with either of those claims. Until very recently, long after that time. Ginsburg. Counsel, do you agree that there is no dispute in the record that there was a close personal relationship between counsel and the judge? I don't know, Your Honor, how close it was. But they did have a relationship. I believe that there is an affidavit. I think counsel is correct that there was an affidavit. And my memory is not very good either. It's a very voluminous record. But there is an affidavit that discusses that at a minimum they did some things together. I believe Judge Reinhart was a former employee. I think that's in the record. They had spent time together on vacations. But I don't have a particular problem with that. When you look at, as we've discussed in our brief, I can't imagine a defense attorney not wanting to have one of their close friends sit on the case, a capital case, and be the presiding judge over that case. I would think that that would be a tactical advantage that would result in a tactical decision to not move to disqualify, to not let Mr. Pezzuto know one of the allegations is that Mr. Chenoweth should have advised Mr. Pezzuto of the relationship and allowed Mr. Pezzuto to make that decision. No. First off, that's not Pezzuto's decision. That's trial counsel's decision whether to disqualify a judge without cause. Well, let's say I think the law is that he can't keep it to himself. I think the client is entitled to the information. He may not be able to keep it to himself, but the ultimate decision to whether to move for that automatic disqualification is exclusively trial counsel's. It is not Mr. Pezzuto's, at least under Idaho law. He doesn't Mr. Pezzuto does not have a personal right to automatic disqualification. It's very akin to trial counsel's ultimate decisions on what defense to present with. But, again, it has to be informed. It has to be informed, but I don't think there's an allegation, and there can't be an allegation, that Mr. Chenoweth wasn't informed. Mr. Pezzuto. No, no, I'm saying the client has to be informed. Yes, and I was going to say there's an allegation that Mr. Pezzuto didn't know. Whether or not that's true is, well, I'm not sure that's clear. Mr. Pezzuto has said in his affidavit that he wasn't informed. As to, unless the Court has additional questions regarding the Martinez issue, as to the fraud on the court claim, I don't have a great deal to say about that. I appreciate zealous representation of death-sentenced inmates, death-sentenced murderers, but based upon the allegations that were raised in this motion, I take personal offense to them. There was no fraud in the court in this case. Counsel, Judge Gould with a question. Yes, Your Honor. If we view these claims relating to claims 13 and 14, not as judicial bias claims, but as ineffective assistance of counsel claims, are they then second or successive, or not, as the appellant's counsel argued? Your Honor, it's our position that because they were not pled as ineffective assistance of counsel claims in the IAC, in the amended, excuse me, the amended petition, that they are successive claims, and they're new claims. We have made that argument repeatedly. If you look at the structure of that amended petition, and I appreciate counsel's argument that they're the prejudice prong of Claim 20 and what I've discussed with Judge Fischer, but Claims 13 and 14, if you look just at the structure of the petition, they're not ineffective assistance of counsel claims. The ineffective assistance of counsel claims were raised in Claims 11 and 12, and there were many subclaims that were associated with the ineffective assistance of counsel claims raised there. Then we go to Claims 13 and 14, which are judicial bias claims. There's 15, 16, and 17, and 18, and 19, which are other additional substantive claims. And then we get clear up to Claim 20, which is the conflict of interest claim. There's the claim 20. I'm sorry, Your Honor? Is Claim 20 a new claim? Is it under second or successive? It is our position that because Claim 20 is a conflict of interest claim and Claim 20 is a new claim, and this Court has determined, at least upon my reading of Jones, that there is a distinct difference between IAC and conflict of interest claims, that Claim 20 is, in fact, a new claim, a new ineffective assistance of counsel claim. We have asked this Court to exercise judicial restraint and not expand Martinez to conflict of interest claims, and it is our position that it is different. Now, counsel has a different reading of Jones than I. I know that Judge Gould is the author of Jones, and ultimately we'll find out what Jones meant. But it's very clear in Jones that there is a distinct, from my reading of it at least, that there is a distinct difference between a conflict of interest claim, which requires a showing of actual conflict that adversely affected counsel's performance, as opposed to an ineffective assistance of counsel claim that requires the showing of deficient performance and a reasonable probability of a different result. If there are no other questions from the Court, the State would ask that this Court affirm the decision of Judge Windmill. Thank you, counsel. Thank you, Your Honors. We'll hear rebuttal. Thank you, Your Honor. Initially, Claim 20 is an ineffective assistance of counsel claim. I have quoted in the brief the actual claim made. It claims ineffective assistance of counsel. It does note the close personal relationship as the probable cause for the failure to challenge the judge. Judge McDonnell clearly understood claims 13 and 14 were the prejudice being alleged. And in his decision in the excerpts of record at page 38, it is he directly says, Petitioner asserts that Chenoweth's friendship with Judge Reinhardt precluded Chenoweth from challenging the impartiality of the judge. Petitioner asserts that the personal relationship was the source of his failure to raise these particular claims, claims 13 and 14. So, counsel, even if we agree with that, what is the prejudice that was suffered as a result of the alleged ineffective assistance of counsel? Well, the major prejudice that was that occurred was that Mr. Pizzuto was tried by a judge who had decided to put him to death before he heard a word of evidence. He was tried by a judge who sat with co-counsel. Or let me just stick with what we had at that point. But the premise was the close personal friendship. Right. So now you've jumped from the close personal friendship to the bias. Well, it's the friendship that precludes the challenge. And Mr. Anderson says, well, there is a challenge in postconviction. It is an innocuous challenge. It is a nothing challenge. It is a postconviction challenge that goes to the matters that happened on the record, to the judge acting in his judicial capacity and asking questions of a witness during sentencing, which did show some hostility, but which the Court found was within the confines of his responsibilities as a judge. And that was the basis of the bias. He questioned witnesses at sentencing. Nick Chenoweth had in his knowledge the fact that his friend, the judge, had told the family before the trial that he was going to sentence his client to death and doesn't challenge him. How much do you want that judge considering your client's life or death, and to whom is your loyalty being displayed? So if those judicial bias claims were not successful, then how can that be the prejudice? They were defaulted, Your Honor, and that is why they were not unsuccessful. The evidence was never developed because they were defaulted. And the last thing I would say is that because Claim 20 is an ineffective assistance of counsel claim, that cites the close personal relationship as the inspiration for the failure to challenge the judge's impartiality. It's not a Keiler claim for post-conviction Martinez analysis. It's a Strickland claim for post-conviction Martinez. Are you required to show that in the absence of the ineffective assistance of counsel that it's unlikely that your client would have been sentenced to death? My understanding is at this stage of the proceedings, we're required to show that but for the ineffective assistance of post-conviction counsel, the proceedings would have been different. But for Mr. Chenoweth's failure to develop the evidence of bias and present that evidence and litigate it in post-conviction, the claims would not have been defaulted. They would have been given a full hearing, and Mr. Pizzuto would have had his day in court. And that's what 60B is designed to do in extraordinary circumstances. This is an extraordinary circumstance. Well, I thought you had to show that the outcome of the proceedings would have been different, in other words, that he would not likely have been sentenced to death. Because that's what you're challenging, the fact that he was sentenced to death by a judge who had already made up his mind. But if the evidence is such that he would have likely been sentenced to death even by a judge who was at not already made up his mind, have you met your required showing? Your Honor, you're going to the prejudice of the underlying claim of ineffective assistance of trial counsel. At this stage of the proceedings, it only has to have some merit. There is certainly some reason to believe that had Mr. Pizzuto not been sentenced by Judge Reinhardt, who had predetermined his death, who had orchestrated evidence to secure the necessary showing to support that death sentence, that he had an arguable claim for life. He was one of four defendants. The only evidence that he is the one who wields the weapon are the two co-defendants who are part of the conspiracy with Judge Reinhardt. Thank you, Your Honor. All right. Thank you. Thank you to both counsel for your argument in this challenging case. And we will stand adjourned.
judges: Fisher, Gould, Rawlinson